## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| SENTINEL INSURANCE | ) | |
| COMPANY , LTD. | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | Hon. |
| | ) | |
| AVANTI MARKETS, INC. | ) | |
| and CONTINENTAL CAFÉ, LLC, | ) | |
| d/b/a CONTINENTAL CANTEEN, | ) | |
| d/b/a CONTINENTAL SERVICES | ) | |
| | ) | |
|     Defendant. | ) | |

_____

### SENTINEL INSURANCE COMPANY LTD.'S
### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel") through its counsel, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for its Complaint for Declaratory Judgment states as follows:

### INTRODUCTION AND NATURE OF ACTION

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure to determine and resolve questions of actual controversy concerning Sentinel's obligations under certain insurance policies issued by Sentinel to Defendant Avanti Markets, Inc. ("Avanti").

2.     This action stems from an underlying lawsuit filed by Continental Cafe, LLC, d/b/a Continental Canteen, d/b/a Continental Services ("Continental") against Avanti and Ingenico Group (not a party to this action). The underlying lawsuit is captioned *Continental Café, LLC, d/b/a Continental Canteen, d/b/a Continental Services v. Avanti Markets, Inc. and Ingenico Group*, E.D. Mich. Case No. 4:19-cv-11283-SDD-DRG ("Continental Lawsuit").

3.     The complaint in the Continental Lawsuit was amended on July 23, 2019 (the "Amended Complaint") (attached as **Exhibit A**).

4.     Sentinel has disclaimed insurance coverage to Avanti for the Continental Lawsuit under the pertinent insurance policies and applicable law because no coverage is afforded under the policies' business liability coverage ("Business Liability Coverage") or umbrella liability coverage ("Umbrella Liability Coverage").

5.     Sentinel requests that this Court declare the rights and obligations of the parties and declare that there is no insurance coverage (defense or indemnity) available to Avanti under the pertinent insurance policies and applicable law for the Continental Lawsuit.

## **THE PARTIES**

6.     Sentinel is a Connecticut insurance company with its principal place of business in Hartford, Connecticut.

7.     Avanti is a Washington corporation with its principal place of business in Renton, Washington. Avanti conducts business in the State of Michigan.

8.     Continental is a Michigan limited liability company with its principal place of business in Sterling Heights, Michigan.  Continental is named in this action as an interested party defendant.

## JURISDICTION AND VENUE

9.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the controversy is between citizens of different states and exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs.

10.     Venue is proper in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district and because Continental resides in this district.

## THE CONTINENTAL LAWSUIT

11.     This case concerns whether insurance coverage is afforded for the claims asserted against Avanti in the underlying Continental Lawsuit.

12.     According to the Amended Complaint in the Continental Lawsuit, Continental's "Market Twenty 4 Seven" business model allows customers to

purchase various lunch or snack food items by proceeding through a self-checkout kiosk at Continental's self-serve marketplaces.

13.    Continental alleges that the speed, efficiency, and security of credit card readers used in its marketplaces are critical to its business model since the model is predicated on providing fast and efficient food services to customers.

14.    On or about June 1, 2011, Continental and Avanti allegedly entered into a Market System Use and Purchase Agreement (the "Agreement") under which Avanti was to provide equipment (hardware and software) and services in support of a self-checkout system (the "System") for use in Continental's self-serve marketplaces.

15.    According to the Amended Complaint, the Agreement provided that: (a) Avanti had the exclusive right to change any hardware components; (b) Continental was required to purchase all system hardware from Avanti; (c) Avanti was required to transfer its warranty rights in the hardware to Continental; and (d) Avanti was required to perform services to maintain the System in operating condition.

16.    Before and after the execution of the Agreement, Avanti allegedly made representations that its System was quick, efficient, and compliant with security standards, and Continental allegedly relied on these representations.

17.     Between 2011 and July 2017, the System allegedly operated at a 93% success rate, in compliance with the needs of Continental's business model.

18.     In May and early June 2017, at the request of Avanti, Continental allegedly began testing and installing Ingenico card reading devices at a number of its Marketplaces, replacing the original System card readers.

19.     In mid June 2017, Continental allegedly advised Avanti that it would not install additional Ingenico card readers because the success rate of these readers was only 77%, which was below Continental's standards.

20.     Continental alleges that there was a malware attack in July 2017 that allegedly affected Avanti's kiosks and compromised sensitive information of Continental's customers.

21.     In response, Avanti allegedly shut down some of its kiosks in order to remove the malware and take steps to prevent another attack.

22.     Due to this temporary shutdown, Continental alleges that it had to devote financial and people resources to manage client matters and the effects of the breach.

23.     Avanti allegedly admitted responsibility for the circumstances that led to the malware attack and informed Continental that it believed the

best course of action was to replace the System card readers with all Ingenico card readers.

24.     Continental alleged that it was required under the Agreement to accept, install, and pay for the Ingenico card readers at all of its Marketplaces and that it did so by July 10, 2017.

25.     Shortly after the installation, Continental allegedly learned that the Ingenico card readers were defective and failed to perform at acceptable success rates as determined by commercially reasonable standards and/or the prior course of performance established by the original System card readers.

26.     Continental alleges that Avanti was aware of these problems prior to installation, but failed to inform Continental of the problems.

27.     As a result of the alleged defective performance of the Ingenico readers, Continental alleges that its sales have decreased since May 2017.

28.     Avanti allegedly admitted responsibility for Continental's damages and agreed to reimburse it for its losses, but has not yet remitted payment to Continental.

29.     Continental asserts the following causes of action against Avanti: (i) fraud, (ii) fraudulent misrepresentation, (iii) negligence, (iv) breach of agreement, (v) breach of agreement to reimburse, (vi) promissory estoppel,

(vii) tortious interference with contractual relations, (vii) breach of implied warranty of fitness for purpose, and (viii) breach of express warranty.

30.     Continental seeks damages against Avanti in excess of $1,000,000 together with all allowable costs, reasonable attorney fees, and interest.

31.     Avanti requested insurance coverage from Sentinel for the Continental Lawsuit.

32.     By letter dated July 19, 2019, Sentinel informed Avanti that there is no coverage for the Continental Lawsuit.

33.     On or about August 2, 2019, Avanti provided the Amended Complaint in the Continental Lawsuit to Sentinel and requested insurance coverage again.

34.     By letter dated August 7, 2019, Sentinel informed Avanti that there is no coverage for the Continental Lawsuit for the Amended Complaint.

## **THE POLICIES**

35.     The insurance policies that are pertinent to this dispute are the Spectrum Business Owner's Policies, number 52 SBA RO4664, which were issued by Sentinel to Avanti for four consecutive policy periods from October 14, 2016 to October 14, 2020 (the "Policies").  The Policies are in writing and constitute the best evidence of their terms.  The Policies are

attached as Exhibits B, C, D, and E.  Sentinel relies upon and incorporates by reference the Policies in their entirety as if fully set forth herein.

36.     At issue in this case specifically are the Policies' Business Liability Coverage and Umbrella Liability Coverage.

37.     The Policies provide in pertinent part with respect to the Business Liability Coverage as follows:

**BUSINESS LIABILITY COVERAGE FORM**

**A.     COVERAGES**

    **1.     BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
    **Insuring Agreement**

        **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

*     *     *

        **b.**     This insurance applies to:

            **(1)**     To "bodily injury" and "property damage" only if:

                **(a)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

                **(b)**     The "bodily injury" or "property damage" occurs during the policy period; and

                **(c)**     Prior to the policy period, no insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured and no "employee" authorized by you to give or receive

8

notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*      \*      \*

**B.   EXCLUSIONS**

**1.   Applicable To Business Liability Coverage**

This insurance does not apply to:

**a.   Expected Or Intended Injury**

**(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

9

\*     \*     \*

**(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\*     \*     \*

**l.**    **Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**m.**    **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

\*     \*     \*

**n.**    **Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in 'your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.**    **Recall Of Products, Work Or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)**   "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.**   **Personal And Advertising Injury**

"Personal and advertising injury";

**(1)**   Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)**   Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

*      *      *

**(4)**   Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

**(5)**   Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

*      *      *

**(8)**   Arising out of an offense committed by an insured whose business is:

*      *      *

**(b)**   Designing or determining content of web sites for others; or

*      *      *

However, this exclusion does not apply to Paragraphs a., b. and c. under the definition of

"personal and advertising injury" under the Definitions Section....[1]

\*     \*     \*

**(11)** Arising out of the violation of a person's right of privacy created by any state or federal act. However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

\*     \*     \*

**(15)** Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information....[2]

q. **Electronic Data**
Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

\*     \*     \*

t. **Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information**
"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

---

[1] As amended by the Policies' Business Liability Coverage Form – Amendatory Endorsement, Form SS 00 60 09 15.

[2] As amended by the Policies' Business Liability Coverage Form – Amendatory Endorsement, Form SS 00 60 09 15.

**(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\*    \*    \*

**E.**    **LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

\*    \*    \*

**2.**    **Duties In The Event of Occurrence, Offense, Claim Or Suit**

\*    \*    \*

**d.**    **Obligations At The Insured's Own Cost**

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\*    \*    \*

**G.**    **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\*    \*    \*

**5.**    "Bodily injury" means physical:

**a.**    Injury;

**b.**    Sickness; or

**c.**    Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

\*    \*    \*

**7.**    "Electronic data" means information, facts or programs:

**a.**    Stored as or on;

**b.**    Created or used on; or

**c.**    Transmitted to or from

13

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*       *       *

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be sued or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangers; or

    **b.** You have failed to fulfill the terms of a contract agreement;

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

*       *       *

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor; ...

*       *       *

**20.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

14

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

*   *   *

**24.**  "Your product":

    **a.**    Means:

        **(1)**  Any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**  You;

            **(b)**  Others trading under your name; or

            **(c)**  A person or organization whose business or assets you have acquired; and

        **(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*   *   *

**25.**  "Your work":

    **a.**    Means:

        **(1)**  Work or operations performed by you or on your behalf; and

        **(2)**  Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or sue of "your work"; and

        **(2)**  The providing of or failure to provide warnings or instructions.

*   *   *

**PERSONAL AND ADVERTISING INJURY EXCLUSION – LIMITED**

This endorsement modifies insurance provided under the following:

## BUSINESS LIABILITY COVERAGE FORM

This insurance does not apply to "personal and advertising injury" and none of the references to "personal and advertising injury" in the policy apply.

This exclusion does not apply to "personal and advertising injury" arising out of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution; or

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor.

*    *    *

38.    The Policies provide in pertinent part with respect to the

Umbrella Liability Coverage as follows:

### SECTION I – COVERAGES
### INSURING AGREEMENTS

    **A.**    **Umbrella Liability Insurance**

        **1.**    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

*    *    *

        **2.**    This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

            **a.**    The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"; and

            **b.**    Prior to the policy period, no "insured" listed under Paragraph **A.** of Section **III** – Who Is An

16

Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the "policy period".

3. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**a.** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**b.** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**c.** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**B.**   **Exclusions**

This policy does not apply to:

\*     \*     \*

**10.**   **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**11.**   **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

\*      \*      \*

**12.   Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured arising out of:

**1**.    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**2.**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

\*      \*      \*

**13.   Recall of Products, Work or Impaired Property**
"Damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a**.    "Your product";

**b.**    "Your work"; or

**c.**    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**14.   Expected or Intended**
"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

\*      \*      \*

**24.   Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information**
"Bodily injury", "property damage", or "personal advertising injury" arising directly or indirectly out of

any action or omission that violates or is alleged to violate:

**a**.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\*      \*      \*

**SECTION VII – DEFINITIONS**

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

\*      \*      \*

**D.**    **"Damages"** means a monetary award, monetary settlement or monetary judgment.  "Damages" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

The following are not considered "damages" and are not covered by this policy:

**1.**    Fines, penalties, sanctions or taxes;

**2.**    Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or

**3.**    Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this policy.

\*      \*      \*

19

**F.**   **"Occurrence"** means:

    **1.**   With respect to "bodily injury" or "property damage", an "accident", including continuous or repeated exposure to substantially the same general harmful conditions.

    **2.**   With respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

*      *      *

**EXCLUSION**
**ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION [Form SX 23 15 12 15]**

This endorsement modifies insurance provided under the following:
**UMBRELLA LIABILITY PROVISIONS (SX 80 02)**

**A.** The following is added to **Exclusions, B.4 Personal and Advertising Injury** of SECTION 1 – COVERAGES:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**
"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**B. Exclusion B.22 Electronic Data** of SECTION 1 – COVERAGES is deleted and replaced with the following:

**22. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**
Damages arising out of:
**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data….

**FOLLOWING FORM ENDORSEMENT –
PERSONAL AND ADVERTISING INJURY**

This endorsement modifies insurance provided under the following:
**UMBRELLA POLICY PROVISIONS**

Exclusion **B.4** (**Section I – Coverages**), is replaced by the following:
**4. Personal and Advertising Injury**
This policy does not apply to "personal and advertising injury".

**EXCEPTION**
This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.

\*      \*      \*

<u>**COUNT I**</u>

**DECLARATORY JUDGMENT – NO BUSINESS LIABILITY COVERAGE FOR THE CONTINENTAL LAWSUIT ("BODILY INJURY" OR "PROPERTY DAMAGE")**

39.    Sentinel incorporates by reference all the allegations in paragraphs 1 to 38 of this Complaint for Declaratory Judgment as if restated herein.

40.    There is an actual controversy and dispute between the parties regarding whether insurance coverage exists for the Continental Lawsuit under the Business Liability Coverage for "bodily injury" or "property damage."

41.    Sentinel seeks a declaration that it has no duty to defend or indemnify Avanti for the Continental Lawsuit under the Policies' Business Liability Coverage for "bodily injury" or "property damage."

42.    The Insuring Agreement of the Policies' Business Liability Coverage provides, in pertinent part, that Sentinel will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' ... to which this insurance applies." It further states that the Business Liability Coverage applies only if the "'bodily injury' or

'property damage' is caused by an 'occurrence'." "Bodily injury," "property damage" and "occurrence" are defined in the Policies as set forth above.[3]

43.     There is no insurance coverage for the Continental Lawsuit under the Policies' Business Liability Coverage because there are no allegations of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined and therefore the Insuring Agreement is not satisfied.

44.     The Insuring Agreement of the Policies' Business Liability Coverage further provides, in pertinent part, that "[p]rior to the policy period, no insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part."

45.     There is no insurance coverage for the Continental Lawsuit under the Policies' Business Liability Coverage to the extent that any insured or such authorized employee knew prior to the applicable policy period that any "bodily injury" or "property damage" (as those terms are defined in the Policies) alleged in the Continental Lawsuit had occurred in whole or in part.

---

[3] The policy terms quoted in this Complaint with internal quotation marks (*e.g.*, "bodily injury") are defined in the Policies.  The pertinent definitions are quoted in Paragraphs 37 and 38 above.

46.     Even if Avanti is able to satisfy the requirements of the Insuring Agreement for Business Liability Coverage, one or more of the following exclusions apply:

a.      The Policies exclude insurance coverage for "property damage" which is "expected or intended from the standpoint of the insured" ("Expected PD Exclusion"). There is no Business Liability Coverage for the Continental Lawsuit for such described "property damage."

b.      The Policies exclude insurance coverage for "'property damage' to 'your product' arising out of it or any part of it" ("Your Product Exclusion").  There is no Business Liability Coverage for the Continental Lawsuit for such described "property damage."

c.      The Policies exclude insurance coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'" ("Your Work Exclusion"). There is no Business Liability Coverage for the Continental Lawsuit for such described "property damage."

d.      The Policies exclude insurance coverage for "'property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous

24

condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms" ("Impaired Property Exclusion"). There is no Business Liability Coverage for the Continental Lawsuit for such described "property damage."

e.      The Policies exclude insurance coverage for "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property'; if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it" ("Loss of Use Exclusion"). There is no Business Liability Coverage for the Continental Lawsuit for such described damages.

f.      The Policies exclude insurance coverage for "Damages… arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of

nonpublic information" ("Access or Disclosure PD Exclusion").  There is no Business Liability Coverage for the Continental Lawsuit for such described damages.

g.     The Policies exclude insurance coverage for "Damages arising out of the loss of, loss of use of, damage to, corruption of, or inability to access, or inability to manipulate electronic data" ("Electronic Data Exclusion"). There is no Business Liability Coverage for the Continental Lawsuit for such described damages.

47.    There is no insurance coverage under the Policies' Business Liability Coverage for "bodily injury" or "property damage" to the extent that any insured voluntarily makes a payment, assumes any obligation, or incurs any expense, other than for first aid, without Sentinel's consent.

48.    There is no insurance coverage under the Policies' Business Liability Coverage for any claim in the Continental Lawsuit for statutory penalties, injunctive relief, declaratory relief, or any other relief that does not qualify as damages.

49.    There is no insurance coverage under the Policies' Business Liability Coverage for the Continental Lawsuit to the extent that it involves risks or losses, losses in progress, non-fortuitous events or uninsurable risks

of which any insured knew or should have known before the Policies, or any of them, were issued.

50.    Insurance coverage may also be limited or excluded under the Business Liability Coverage to the extent that any other terms, definitions, exclusions, conditions and endorsements of the Policies not specifically identified herein apply to limit coverage, in whole or in part, for the Continental Lawsuit.

## COUNT II

### DECLARATORY JUDGMENT – NO BUSINESS LIABILITY COVERAGE FOR THE CONTINENTAL LAWSUIT ("PERSONAL AND ADVERTISING INJURY")

51.    Sentinel incorporates by reference all the allegations in paragraphs 1 to 50 of this Complaint for Declaratory Judgment as if restated herein.

52.    There is an actual controversy and dispute between the parties regarding whether insurance coverage exists for the Continental Lawsuit under the Business Liability Coverage for "personal and advertising injury."

53.    Sentinel seeks a declaration that it has no duty to defend or indemnify Avanti for the Continental Lawsuit under the Policies' Business Liability Coverage for "personal and advertising injury."

54.     The Insuring Agreement of the Business Liability Coverage provides, in pertinent part, that Sentinel will "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'personal and advertising injury' to which this insurance applies." "Personal and advertising injury," is defined in the Policies as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; or c. ... wrongful eviction...."

55.     There is no insurance coverage for the Continental Lawsuit under the Policies' Business Liability Coverage because there are no allegations of "personal and advertising injury" as that term is defined and therefore the Insuring Agreement is not satisfied.

56.     Even if Avanti is able to satisfy the requirements of the Insuring Agreement for Business Liability coverage, one or more of the following exclusions apply:

    a.     The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any

other type of nonpublic information..." ("Access or Disclosure P&AI Exclusion").  There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

b.      The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of any breach of contract...."  There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

c.      The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of the failure of goods, products or services to conform..." There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

d.      The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising directly or indirectly out of any action or omission that violates or is alleged to violate: (1) the Telephone Consumer Protection Act ('TCPA'), including any amendment of or addition to such law; (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or (3) Any statute, ordinance or regulation,  other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or

distribution of material or information" ("Statutory Distribution Exclusion").  There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury" to the extent that Continental later pursues claims pursuant to such statutes and its injuries directly or indirectly arise out of those alleged statutory violations.

e.    The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of the violation of a person's right of privacy created by any state or federal act." There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury" to the extent that Continental later pursues claims pursuant to such statutes and its injuries arise out of those alleged statutory violations.

f.    The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting [such injury]." There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

g.    The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity." There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

h.    The Policies exclude insurance coverage for "personal and advertising injury" "[a]rising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period." There is no Business Liability Coverage for the Continental Lawsuit for such described "personal and advertising injury."

57.    There is no insurance coverage under the Policies' Business Liability Coverage for "personal and advertising injury" to the extent that any insured voluntarily makes a payment, assumes any obligation, or incurs any expense, other than for first aid, without Sentinel's consent.

58.    There is no insurance coverage under the Policies' Business Liability Coverage for any claim in the Continental Lawsuit for statutory penalties, injunctive relief, declaratory relief, or any other relief that does not qualify as damages.

59.     There is no insurance coverage under the Policies' Business Liability Coverage for the Continental Lawsuit to the extent that it involves risks or losses, losses in progress, non-fortuitous events or uninsurable risks of which any insured knew or should have known before the Policies, or any of them, were issued.

60.     Insurance coverage may also be limited or excluded under the Business Liability Coverage to the extent that any other terms, definitions, exclusions, conditions and endorsements of the Policies not specifically identified herein apply to limit coverage, in whole or in part, for the Continental Lawsuit.

## COUNT III

### DECLARATORY JUDGMENT – NO UMBRELLA LIABILITY COVERAGE FOR THE CONTINENTAL LAWSUIT

61.     Sentinel incorporates by reference all the allegations in paragraphs 1 to 60 of this Complaint for Declaratory Judgment as if restated herein.

62.     There is an actual controversy and dispute between the parties regarding whether insurance coverage exists for the Continental Lawsuit under the Umbrella Liability Coverage.

63.    Sentinel seeks a declaration that it has no duty to defend or indemnify Avanti for the Continental Lawsuit under the Policies' Umbrella Liability Coverage.

64.    The Insuring Agreement of the Policies' Umbrella Liability Coverage provides, in pertinent part, that Sentinel will "pay those sums that the 'insured' becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance' or of the 'self-insured retention' when no 'underlying insurance' applies because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence.'"  "Bodily injury," "property damage," "personal and advertising injury," and "occurrence" are defined in the Policies as set forth above.

65.    The Continental Lawsuit does not allege "bodily injury", "property damage", or "personal and advertising injury" caused by an "occurrence" as those terms are defined and therefore there is no insurance coverage under the Policies' Umbrella Liability Coverage because the Insuring Agreement is not satisfied.

66.    The Insuring Agreement of the Policies' Umbrella Liability Coverage further provides, in pertinent part, that "[p]rior to the policy period, no 'insured' listed under Paragraph **A.** of Section **III** – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or

claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part."

67.     There is no insurance coverage for the Continental Lawsuit under the Policies' Umbrella Liability Coverage to the extent that any "insured" or such authorized employee knew prior to the applicable policy period that any "bodily injury" or "property damage" (as those terms are defined in the Policies) alleged in the Continental Lawsuit had occurred in whole or in part.

68.     Even if Avanti is able to satisfy the requirements of the Insuring Agreement with respect to "property damage," one or more of the following exclusions apply to preclude Umbrella Liability Coverage in the same manner that these exclusions apply to preclude Business Liability Coverage for "property damage":

      a. Umbrella Liability Coverage Section I.B.14, which corresponds with the Expected PD Exclusion.

      b. Umbrella Liability Coverage Section I.B.10, which corresponds with the Your Product Exclusion.

      c. Umbrella Liability Coverage Section I.B.11, which corresponds with the Your Work Exclusion.

      d. Umbrella Liability Coverage Section I.B.12 corresponds with the Impaired Property Exclusion.

34

e. Umbrella Liability Coverage Section I.B.13, which corresponds with the Loss of Use Exclusion.

f. Endorsement Form SX 23 15 12 15, which contains exclusions that correspond with the Access and Disclosure PD Exclusion and the Electronic Data Exclusion.

69. The Policies state that the Umbrella Liability Coverage does not apply to "personal and advertising injury" unless coverage for "personal and advertising injury" is provided by the underlying Business Liability Coverage in the Policies. No such coverage exists for the Continental Lawsuit.

70. In addition, even if Avanti is able to otherwise satisfy the requirements of the Insuring Agreement with respect to "personal and advertising injury," one or more of the following exclusions apply in the same manner that these exclusions apply to preclude Business Liability Coverage:

a. Endorsement Form SX 23 15 12 15, which, in part, corresponds with the Access or Disclosure P&AI Exclusion.

b. Umbrella Exclusion I.B.24, which corresponds with the Statutory Distribution Exclusion.

71. There is no insurance coverage under the Policies' Umbrella Liability Coverage to the extent that any insured makes a payment, assumes

any obligation, or incurs any expense, other than for first aid, without Sentinel's consent.

72.    There is no insurance coverage under the Policies' Umbrella Liability Coverage for any claim in the Continental Lawsuit for statutory penalties, injunctive relief, declaratory relief, or any other relief that does not qualify as "damages" as that term is defined in the Policies' Umbrella Liability Coverage.

73.    There is no insurance coverage under the Policies' Umbrella Liability Coverage for the Continental Lawsuit to the extent that it involves risks or losses, losses in progress, non-fortuitous events or uninsurable risks of which any insured knew or should have known before the Policies, or any of them, were issued.

74.    Insurance coverage may also be limited or excluded under the Umbrella Liability Coverage to the extent that any other terms, definitions, exclusions, conditions and endorsements of the Policies not specifically identified herein apply to limit coverage, in whole or in part, for the Continental Lawsuit.

## **REQUEST FOR RELIEF**

WHEREFORE, Sentinel respectfully requests the following relief:

a.      A declaration of the rights and duties of the parties under the Policies and applicable law with respect to the Continental Lawsuit;

b.      A declaration that Sentinel has no duty to defend or indemnify Avanti for the Continental Lawsuit under the Policies and applicable law; and

c.      Such other relief as this Court may deem just and appropriate.

Respectfully Submitted,

*s/Elaine M. Pohl*
Elaine M. Pohl (P60359)
PLUNKETT COONEY, P.C.
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
epohl@plunkettcooney.com

Dated: February 14, 2020

Open.17606.93941.22971771-1